(No. 25445.—

THE SUPERIOR COAL COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(NELLIE VIOLET LONZARETTI, Plaintiff in Error.)

*Opinion filed April 17, 1940.*

D. W. JOHNSTON, for plaintiff in error.

E. N. NEVINS, for defendant in error.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Plaintiff in error, Nellie Violet Lonzaretti, filed her petition for compensation on account of the death of her hus-

band, Frank Lonzaretti, which occurred August 26, 1938. The arbitrator made a finding in favor of defendant in error, the Superior Coal Company, but the commission, on review, entered an award in favor of the widow. On *certiorari* the circuit court of Macoupin county reversed the order of the commission and set aside the award. We have granted the widow's petition for a writ of error to review that decision.

The evidence shows that Frank Lonzaretti had worked for the defendant in error company for many years and was in good health and spirits the day he died. He and a helper, Bartoletti, ran a coal-loading machine driven by electric current. Lonzaretti had his left hand on a tram lever on this machine at about 2:00 o'clock in the afternoon when suddenly the assistant mine foreman, James Watson, and the helper, Bartoletti, saw him stagger back from the loading machine and fall. Watson caught him and the two men tried to revive him and gave him artificial respiration. According to Watson, Lonzaretti moaned once and died within a few minutes. The machine had been repaired that morning. A chain had been broken and an electrician, Hugh Fulton, testified the machine had smoked because of a partially open power control. The wooden handle which belonged on the tram lever had been removed because it was broken, and a new one was put on after the accident. Several witnesses testified that the skin on the fingers of Lonzaretti's left hand was darker than on his right hand, that it looked scorched and glazed, that there was a blister on the palm of his left hand, and that there were abrasions. The proof shows the discoloration could not have been caused by the use of cigarettes, because the deceased did not smoke them. The skin on his left hand began to curl up before Lonzaretti was buried. Bartoletti had hold of another lever attached to the same machine at the time it is claimed Lonzaretti was electrocuted, but felt no shock. The machine was protected by a system of fuses, and there was also a

ground wire. Over objections, one of the electricians testified he had known men operating such machines to receive electrical shocks. The testimony showed the machine was in working condition the next day, and that the men running it felt no shock when they took hold of the levers. The company doctor testified he could find no apparent, outside cause of death, and because of this it was his opinion Lonzaretti had died from natural causes. There was no *post mortem* examination.

In *Bloomington, Decatur and Champaign Railroad Co.* v. *Industrial Board,* 276 Ill. 454, two men were working on top of an electric railroad car. Near the man named Yanda, who was killed, was an open ventilator, with an iron "ground" at the bottom. There was also near him an exposed end of an electric cable carrying 550 volts. The other employee saw him "suddenly rise up in a half-standing position, with both feet on top of the car, and fall over lengthwise of the car." The fellow employee did not see him come in contact with either the iron plate or cable. He died almost immediately. Yanda's daughter testified that his hands were burned, and one of them badly, so that it was drawn and shriveled. At page 458 this court said: "The evidence was that Yanda was, and for twenty-one years had been, in perfect physical condition, and the reasonable presumption is that he was killed by some external, efficient agency. The agency was present if it became operative through contact with the iron plate and exposed end of the cable. If the testimony of the daughter was true, it is certain that he did come into contact with the deadly agency, and we have no authority to consider the weight of the evidence where there was credible testimony before the board. The fact that other persons testified differently does not authorize interference with the decision of the board. Neither does the fact that Albeitz, who was looking down and working with his cap over his eyes, did not see Yanda make the contact. Albeitz saw him half standing, when he keeled over, gave

two or three gasps and was dead, and the rational explanation is that the death was caused by an electric shock."

It was contended in *Wasson Coal Co.* v. *Industrial Com.* 296 Ill. 217, as here, that the proof did not show that the death arose out of and in the course of the deceased's employment. In discussing that question, this court said at page 222: "No autopsy was held, and it may be admitted that the proof does not show with absolute certainty just what caused the death. The undisputed fact remains that Smith did suddenly die from some cause. There was at the place of his sudden death and within easy contact by him an electric wire carrying a current which is not disputed to have been of sufficient voltage to cause death. We have above stated the substance of the testimony relating to the effects of 'flu' and the possibility of sudden death resulting from it. To our minds that death resulted from that cause is much more remote and less probable than that it resulted from deceased's contact with the electric wire. We do not think it can be said the two views are equally compatible with the evidence. The cause of death need not be shown by positive and direct testimony, but it is sufficiently shown if the facts and circumstances proved are such that on the whole evidence the reasonable inference to be drawn is that it rose out of the employment. (*Smith-Lohr Coal Co.* v. *Industrial Com.* 286 Ill. 34.) It has been repeatedly held that we cannot weigh the evidence and determine upon which side it preponderates, but it seems to us to require more conjecture and speculation to say from the testimony that the death did not result from electrocution than to say it was so caused."

In *Western Electric Co.* v. *Industrial Com.* 285 Ill. 279, the proof showed that there was no leak in the current and the insulation on the electric light cord was in good condition. It was also shown that at times, and under certain conditions, electricity will escape from a cord of this kind when no leakage could be detected either immediately before

or afterwards, and we upheld an award for the death of the employee.

In the case before us the electric cable which ran to the metal loading machine carried 250 volts. The evidence as to burns, Lonzaretti's good health for twenty years or more, and the circumstances proved, all tended to establish that he died from an electric shock. There was evidence upon which the Industrial Commission could base an award, and the circuit court erred in substituting its judgment for that of the commission.

The order of the circuit court of Macoupin county is reversed and the cause is remanded, with directions to confirm the award of the Industrial Commission.

*Reversed and remanded, with directions.*