THEODORE H. INGRAM, Appellant, *v.* THE INDUSTRIAL COMMISSION *et al.* (North Central Airlines, Appellee).

First District (Industrial Commission Division)   No. 1—84—371

Opinion filed April 11, 1984.—Rehearing denied June 4, 1984.

Theodore H. Ingram, of Chicago, for appellant, *pro se.*

Burgeson, Laughlin, Cunningham & Hare, of Chicago (Michael C. Piller, of counsel), for appellee.

JUSTICE WEBBER delivered the opinion of the court:

Petitioner, Theodore Ingram, filed an application for adjustment of claim seeking workers' compensation benefits and naming his employer, North Central Airlines, as respondent. Petitioner alleges that

he suffered a back injury while in the course of his employment. The arbitrator entered a decision awarding Ingram compensation for 69 and 6/7th weeks, that being the period of temporary total incapacity for work. The arbitrator also found that Ingram was permanently partially disabled to the extent of 40% and, pursuant to section 8(d)(2) of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(d)(2)), awarded him compensation for a further period of 200 weeks. Both parties sought review before the Industrial Commission. The Commission modified the decision of the arbitrator, finding that Ingram was permanently partially disabled only to the extent of 30%. Accordingly, the related compensation period was reduced from 200 weeks to 150 weeks. The circuit court affirmed the decision of the Commission. Ingram now appeals the Commission's finding regarding the extent of his permanent disability. We affirm.

On appeal, Ingram contends that he is 100% permanently disabled as a result of his back injury. He argues that the Commission's finding that he was permanently partially disabled only to the extent of 30% is against the manifest weight of the evidence.

Ingram had been employed by respondent for 11 years, his job requiring him to clean the interiors of respondent's aircraft. On March 7, 1977, while moving a cart on a ramp, he slipped and fell backwards, hitting his buttocks and lower back on the pavement. As a result, he suffered severe back pain. He was treated by respondent's doctors at the O'Hare Industrial Clinic, beginning on the day after his accident. He was hospitalized at Northwest Community Hospital in May and September 1977, during which times he was placed in traction and underwent X rays and a myelogram. On October 31, 1977, he again entered the hospital, and Dr. Bruno, an orthopedic surgeon, performed lumbar disc surgery (a laminectomy) on his lower back. Dr. Bruno was also Ingram's treating physician at the O'Hare Industrial Clinic both before and after the surgery. Dr. Bruno felt that Ingram made a good recovery, and he released Ingram for work in May 1978.

Ingram returned to work on May 6, 1978, where he performed all of his required duties except for work such as pulling garbage cans. He continued to experience some lesser pain and noticed that he had difficulty in bending. In June 1979 Ingram was dismissed from his employment for reasons apparently unrelated to his back injury. He then sought similar employment with other airlines without success.

At his attorney's request, Ingram was examined by Dr. Hirschtick, an orthopedic surgeon, on January 12, 1979, September 4, 1979, and December 12, 1980. In December 1980, Dr. Hirschtick found involuntary muscle spasm, a loss of 20 degrees of extension in the lower spine, and a restriction of forward flexion of the lower spine to

the point where Ingram brought his fingertips to within 10 inches of his toes. He further found straight leg raising to 60 degrees on the right and to 70 degrees on the left, that the right ankle reflex was weaker than the left, and that there was an impairment of sensation over the right leg and foot.

Another orthopedic surgeon, Dr. Smith, examined Ingram at the respondent's request on April 24, 1979, and January 12, 1981. In January 1981 he found no muscle spasm, forward flexion limited 15 degrees, and lateral flexion limited only 5 degrees. He also found straight leg raising possible to 100 degrees bilaterally and that the right tendon Achilles reflex was absent with no loss of sensation. Other tests performed were normal.

At the arbitration hearing, Nicholas Schira, a research analyst from the Illinois Bureau of Employment Security, testified on behalf of the petitioner. He opined that a person in Ingram's circumstances would be unemployable. However, this opinion was based upon factors including, but not restricted to, Ingram's medical condition.

Dr. Hirschtick testified that, on the basis of his examinations, he believed that Ingram was totally and permanently disabled from work. This opinion is undermined by the fact that the results of Dr. Smith's examination were considerably at odds with those of Dr. Hirschtick. Furthermore, the post-operative reports of Dr. Bruno stated that Ingram could continue with full job activities and that there were no major problems whatsoever with his back. Most importantly, Ingram returned to work for over a year after recovering from his surgery, strongly suggesting that he was not totally disabled.

The determination of the degree of disability is a question of fact to be resolved by the Industrial Commission. Where, as here, there is conflicting evidence as to the degree of disability, the determination of the Commission should not be set aside on review unless it is against the manifest weight of the evidence. (*Lachona v. Industrial Com.* (1981), 87 Ill. 2d 208, 429 N.E.2d 858.) Based on the conflicting evidence presented, we cannot say that the Commission's finding that Ingram was permanently disabled only to the extent of 30% was against the manifest weight of the evidence. Instead, we believe the Commission's finding had ample support in the evidence.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SEIDENFELD, P.J., McNAMARA, BARRY, KASSERMAN, JJ., concur.